UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEPHAN LECCESE,

       Plaintiff,

  v.

SHARESTATES, INC.,

       Defendant.

CIVIL ACTION NO. 24 Civ. 1060 (JHR) (SLC)

**OPINION & ORDER**

**SARAH L. CAVE,** United States Magistrate Judge.

## I. INTRODUCTION

Plaintiff Stephan Leccese moves to compel Defendant Sharestates, Inc. to produce twelve documents that it has withheld from production as protected by the attorney-client privilege (the "Documents"). (ECF Nos. 35; 35-2 (the "Motion")). Sharestates submitted the Documents, which the Court reviewed in camera. (ECF No. 39). For the reasons set forth below, the Motion is GRANTED IN PART and DENIED IN PART.

## II. BACKGROUND

Mr. Leccese held the position of Chief Strategy & Growth Officer at Sharestates from October 2, 2020 until June 28, 2023, when Sharestates informed him that it was terminating his employment for cause. (ECF No. 5 ¶¶ 1-26). In this action, Mr. Leccese seeks to recover salary, bonus, and severance payments under New York common law and New York Labor Law §§ 190 and 740 et seq. (Id. ¶¶ 1, 27-46).

On March 12, 2025, Mr. Leccese filed the Motion seeking a conference to discuss, inter alia, the Documents. (ECF No. 35). On its privilege log, Sharestates designated each of the Documents as protected by the attorney-client privilege. (ECF No. 35-2 at 6-10). After the Honorable Jennifer H. Rearden referred the matter for general pretrial supervision (ECF No. 36),

1

the undersigned held a discovery conference (the "Conference"). (ECF No. 37; ECF min. entry dated Mar. 19, 2025). Following the Conference, the Court ordered Sharestates to provide the Documents to Chambers for in camera review. (ECF No. 38 (the "Post-Conference Order")). On March 23, 2025, Sharestates submitted the Documents. (ECF No. 39). On May 9, 2025, Sharestates submitted a letter arguing that the Documents reflect legal advice protected by the attorney-client privilege. (ECF No. 45). On May 12, 2025, Mr. Leccese submitted a letter in reply. (ECF No. 46).

The Documents are emails dated between June and September 2021; some, but not all, contain communications between Sharestates employees and Ruth Kraft, a partner in the law firm of Vigorito, Barker, Patterson, Nichols & Porter, LLP, whom we understand from the Conference to be Sharestates' outside employment counsel.

### III. DISCUSSION

#### A. Legal Standard

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." Upjohn Co. v. U.S., 449 U.S. 383, 389 (1981). Under federal law, the attorney-client privilege applies only if all the following are met:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 160 F.R.D. 437, 441 (S.D.N.Y. 1995) (quoting United States v. United Shoe Mach. Corp., 89 F. Supp. 357, 358–59 (D. Mass. 1950)). Under New York law, for the privilege to apply, the communication must have been made "for the purpose of facilitating the rendition of legal advice or services, in the course of a professional relationship." Spectrum Sys. Int'l Corp. v. Chem. Bank, 78 N.Y.2d 371, 377–78 (1991). The communication must also "be primarily or predominantly of a legal character." Id. at 378. In evaluating whether the privilege applies, the "critical inquiry" is "whether, viewing the lawyer's communication in its full content and context, it was made in order to render legal advice or services to the client." Id. at 379.

The party invoking the attorney-client privilege bears the burden of demonstrating that the privilege applies. See In re Grand Jury Proc., 219 F.3d 175, 182 (2d Cir. 2000) ("In re Grand Jury I"); United States v. Adlman, 68 F.3d 1495, 1500 (2d Cir. 1995) ("Adlman I"); Bowne of New York City, Inc. v. AmBase Corp., 150 F.R.D. 465, 470–71 (S.D.N.Y. 1993); Spectrum, 78 N.Y.2d at 377. To meet this burden, the party asserting the attorney-client privilege must show that the communications were "(1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal assistance." Brennan Ctr. for Just. at N.Y. Univ. Sch. of L. v. U.S. Dep't of Just., 697 F.3d 184, 207 (2d Cir. 2012). This burden "is not discharged by mere conclusory or ipse dixit assertions." In re Grand Jury Subpoenas dated Jan. 4, 1984, 750 F.2d 223, 225 (2d Cir. 1984). "Any ambiguities as to whether the essential elements have been met are construed against the party asserting the privilege." Koumoulis v. Indep. Fin. Mktg. Grp., Inc., 295 F.R.D. 28, 38 (E.D.N.Y. 2013), aff'd, 29 F. Supp. 3d 142 (E.D.N.Y. 2014). As this Court has explained, "the privilege attaches not only to

3

communications by the client to the attorney, but also to advice rendered by the attorney to the client, at least to the extent that such advice may reflect confidential information conveyed by the client." In re Keurig Green Mt. Single-Serve Coffee Antitrust Litig., No. 14 MD 2542 (VSB) (SLC), 2020 WL 8465433, at *2 (S.D.N.Y. Oct. 30, 2020) (quoting Bank Brussels, 160 F.R.D. at 441–42).  The mere fact, however, that a document was transmitted between an attorney and a client does not render the document privileged.  See Dep't of Econ. Dev. v. Arthur Anderson & Co. (U.S.A.), 139 F.R.D. 295, 300 (S.D.N.Y. 1991).  Rather, it "must contain confidential communication relating to legal advice."  Id.; see Renner v. Chase Manhattan Bank, No. 98 Civ. 926 (CSH), 2001 WL 1356192, at *1 (S.D.N.Y. Nov. 2, 2001) (rejecting argument that "any reference to any communication between [a client] and one of his attorneys on any document shields that entire document from disclosure, whether or not the document reveals communications made by [the client] to his attorneys in confidence and for the purpose of obtaining legal advice").  Conversely, "the mere fact that a document contains some public or nonconfidential information does not necessarily make the document discoverable." Astra Aktiebolag v. Andrx Pharm., Inc., 208 F.R.D. 92, 103 (S.D.N.Y. 2002).  Similarly, "just as facts cannot be invested with privilege merely by communicating them to an attorney, so [too] the confidentiality of the communication is not [necessarily] destroyed by disclosure of the underlying facts."  Solomon v. Sci. Am., Inc., 125 F.R.D. 34, 37 (S.D.N.Y. 1988).

"The attorney-client privilege was designed 'to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and [the] administration of justice.'" TVT Recs. v. Island Def Jam Music Grp., 214 F.R.D. 143, 144 (S.D.N.Y. 2003) (quoting Upjohn, 449 U.S. at 389).  "Because the privilege

4

'stands in derogation of the public's right to every [person]'s evidence . . . it ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle.'" TVT Recs., 214 F.R.D. at 144 (quoting In re Grand Jury I, 219 F.3d at 182); see Brown, 474 F. Supp. 3d at 648 ("The privilege is narrowly construed because it renders relevant information undiscoverable."); accord Coventry Cap. US LLC v. EEA Life Settlements Inc., No. 17 Civ. 7417 (VM) (SLC), 2021 WL 4312026, at *3 (S.D.N.Y. Sept. 22, 2021).

Finally, "[t]he party invoking the privilege also has the burden to show that the privilege has not been waived." Wultz v. Bank of China Ltd., 304 F.R.D. 384, 391 (S.D.N.Y. 2015). "It is well established that the attorney-client privilege is waived if the holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the communication to a third party or a stranger to the attorney-client relationship." Denney v. Jenkens & Gilchrist, 362 F. Supp. 2d 407, 412 (S.D.N.Y. 2004). In addition, "the privilege may be implicitly waived when [a party] asserts a claim that in fairness requires examination of protected communications." Trouble v. Wet Seal, Inc., 179 F. Supp. 2d 291, 304 (S.D.N.Y. 2001); see United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991) (explaining that a party "may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes."). Thus, the party invoking the privilege must also show "'that the communications between client and attorney were made in confidence and have been maintained in confidence.'" Id. (quoting In re Horowitz, 482 F.2d 72, 81-82 (2d Cir. 1973)).

B. <u>Application</u>

Applying the above standard, the Court finds that some but not all the Documents are protected by the attorney-client privilege. Sharestates must produce to Mr. Leccese those that are not protected.

1. <u>Document 3</u>[1]

Document 3 is a June 26, 2021 email from Marie Rizk, Sharestates' Chief Administrative Officer, to Ms. Kraft, forwarding (i) a June 25, 2021 email from Horace Atkins, Sharestates' Director of Human Resources to Ms. Rizk and other Sharestates employees, in turn forwarding (ii) a June 25, 2021 email from Kierra White to Mr. Atkins in which she "formally present[s] some concerns [she] was having to HR." Sharestates has not identified Ms. Rizk, Mr. Atkins, or any of the other Sharestates employees on Document 3 as attorneys.

We find that the first email in Document 3, from Ms. Rizk to Ms. Kraft, is protected by the attorney-client privilege. Ms. Rizk is communicating with Ms. Kraft for the purpose of obtaining legal advice. Therefore, the first email on Document 3 does not need to be produced. See <u>Flynn v. Cable News Network, Inc.</u>, No. 21 Civ. 2587 (GHW) (SLC), 2022 WL 17820854, at *3 (S.D.N.Y. Dec. 5, 2022) (holding that attorney-client privilege protected emails to attorney for the purpose of obtaining or discussing legal advice). It is well-settled that the attorney-client privilege "does not protect disclosure of the underlying facts by those who communicated with the attorney." <u>Bennett v. Cuomo</u>, No. 22 Civ. 7846 (VSB) (SLC), 2024 WL 80271, at *6 (S.D.N.Y. Jan. 8, 2024). In other words, Ms. Rizk did not insulate the second and third emails on Document 3 from

---

[1] We use the number of the Documents as they appear on the privilege log. (ECF No. 35-2 at 6-10). Some of the Documents contain multiple emails; we do our best to identify individual emails within each Document.

production by forwarding them to Ms. Kraft.  See 99 Wall Dev. Inc. v. Allied World Spec. Ins. Co., No. 18 Civ. 126 (RA) (KHP), 2020 WL 2730944, at *3 (S.D.N.Y. May 26, 2020) ("A party cannot insulate its communications and documents from discovery in a later litigation simply by copying an attorney.").

The second and third emails on Document 3, however, are dated and were sent before the first email from Ms. Rizk to Ms. Kraft.  No attorney is among the senders or the recipients.  Furthermore, in the original email in the chain, Ms. White describes to Mr. Atkins several interactions with other co-workers and her personnel reviews.  There is no indication that Ms. White is seeking any legal advice.

Accordingly, Sharestates may redact the first email on Document 3 but must produce the second (the June 25, 2021 email from Mr. Atkins) and third (the June 25, 2021 email from Ms. White).

### 2. Document 5

Document 5 contains three emails between Ms. Rizk and Ms. Kraft dated September 16-17, 2021, preceded by a chain of 15 emails between Sharestates employee Aseye Teklu, Ms. Rizk, and Mr. Atkins, in which Ms. Teklu complains about her treatment by Mr. Leccese.  As with Document 3, in the first three emails, Ms. Rizk and Ms. Kraft are communicating for the purpose of seeking or providing, respectively, legal advice, but the remainder of the chain between Ms. Teklu, Ms. Rizk, and Mr. Atkins—with one exception—is for the purpose of gathering information about Ms. Teklu's interactions with Mr. Leccese and Ms. Teklu's performance review, not for purposes of seeking or providing legal advice.  The only exception is the September 15, 2021 email from Ms. Rizk to Ms. Teklu and Mr. Atkins (on page 4 of Document 5), in which

Ms. Rizk summarizes legal advice that Ms. Kraft provided and therefore is also protected by the attorney-client privilege.

Accordingly, Sharestates may redact (i) the first three emails between Ms. Rizk and Ms. Kraft and (ii) the September 15, 2021 email from Ms. Rizk to Ms. Teklu and Mr. Atkins, but it must otherwise produce the remainder of Document 5.

### 3. Document 6

Document 6 contains three emails between Ms. Rizk, Ms. Kraft, and Allen Shayanfekr, Sharestates' Chief Executive Officer, dated September 24 and 27, 2021, discussing legal advice concerning Ms. Teklu's complaints about Mr. Leccese. The balance of Document 6 consists of eleven emails dated in September 2021 between Ms. Teklu, Ms. Rizk, and Mr. Atkins concerning Ms. Teklu's complaints.

As with Documents 3 and 5, the first three emails between Ms. Rizk, Ms. Kraft, and Mr. Shayanfekr are communications sent for the purpose of seeking or providing legal advice, and therefore are protected by the attorney-client privilege. In contrast, all but one of the remaining emails between Ms. Rizk, Ms. Teklu, and Mr. Atkins contain no indication that they were sent for the purpose of seeking or providing legal advice and therefore are not protected by the privilege. The sole exception is the September 24, 2021 email from Ms. Rizk to Ms. Teklu and Mr. Atkins (at the bottom of page 3 of Document 6), in which she summarizes Ms. Kraft's legal advice; the privilege applies to this email.

Accordingly, Sharestates may redact (i) the first three emails between Ms. Rizk, Ms. Kraft, and Mr. Shayanfekr, and (ii) the September 24, 2021 email from Ms. Rizk to Ms. Teklu and Mr. Atkins, but it must produce the remainder of Document 6.

### 4. Document 7

Document 7 contains five emails dated September 16-20, 2021 between Ms. Rizk and Ms. Kraft concerning Ms. Teklu's complaint and Sharestates' response thereto. The balance of Document 7 consists of nine emails dated in July and September 2021 between Ms. Teklu, Ms. Rizk, and Mr. Atkins concerning Ms. Teklu's complaint about Mr. Leccese and the response thereto. As with Documents 3, 5, and 6, the first five emails between Ms. Rizk and Ms. Kraft were sent for the purpose of seeking or providing legal advice and are protected by the attorney-client privilege. The balance, with the same exception as Document 5—the September 15, 2021 email from Ms. Rizk to Ms. Teklu and Mr. Atkins—contains no indication of a request for or the provision of legal advice and are not protected by the privilege.

Accordingly, Sharestates may redact (i) the first five emails between Ms. Rizk and Ms. Kraft and (ii) the September 15, 2021 email from Ms. Rizk to Ms. Teklu and Mr. Atkins (on page 6 of Document 7), but it must produce the remainder of Document 7.

### 5. Document 8

Document 8 first contains two emails dated July 19, 2021 between Ms. Kraft and Ms. Rizk with the subject line "Formal Response to Mid Year Review." Ms. Rizk forwards to Ms. Kraft a thread of four emails beginning with a July 19, 2021 email from Nina Smalls-Toogood, Sharestates' In-House Counsel, who is providing her "formal response" to her recent midyear review.[2] Ms. Kraft provides her legal advice concerning Ms. Smalls-Toogood's response to her review.

---

[2] Ms. Smalls-Toogood indicates that she is attaching an excel spreadsheet, her midyear review, and screenshots, but these are not included in Document 8.

The first two emails between Ms. Kraft and Ms. Rizk are for the purpose of providing or seeking legal advice concerning Ms. Smalls-Toogood's review and are therefore protected by the attorney-client privilege. The balance of the emails in Document 8 were not sent for the purpose of seeking or providing legal advice—even though Ms. Smalls-Toogood is an attorney, her email concerns her interactions with Mr. Leccese and others in the workplace and does not seek or provide legal advice. The remaining emails are not protected by the privilege.

Accordingly, Sharestates may redact the first two emails between Ms. Kraft and Ms. Rizk but it must produce the remainder of Document 8.

### 6. Document 9

Document 9 first contains six emails dated June 26-28, 2021 between Ms. Kraft and Ms. Rizk concerning Ms. White's complaint. (See Document 3, supra). These six emails were sent for the purpose of seeking or providing legal advice and are protected by the privilege. The two remaining emails in Document 9 are (i) an email from Mr. Atkins to Ms. Rizk and others commenting on Ms. White's June 25, 2021 email to Mr. Atkins and (ii) Ms. White's June 25, 2021 email. These two emails were not sent for the purpose of seeking or providing legal advice and are not protected by the privilege.

Accordingly, Sharestates may redact the first six emails dated June 26-28, 2021 between Ms. Kraft and Ms. Rizk, but it must produce the two remaining emails in Document 9.

### 7. Document 11

Document 11 begins with an email dated October 20, 2021 from Amy Doshi, Sharestates' General Counsel, to Ms. Rizk, Mr. Shayanfekr, and other Sharestates employees with the subject "Employment Matters/Legal." Attached is a thread of emails dated July 6, 2021 between

10

Ms. Kraft, Ms. Doshi, and Ms. Rizk concerning employment law matters. Both the October 20, 2021 email from Ms. Doshi and the July 6, 2021 thread were sent for the purpose of seeking or providing legal advice and are protected by the attorney-client privilege. Accordingly, Sharestates is not required to produce Document 11.

### 8. Document 12

Document 12 begins with an email dated July 7, 2021 from Ms. Doshi to Ms. Rizk and others concerning Ms. Doshi's communication with Ms. Kraft about employment law matters. The balance of Document 12 contains the July 6, 2021 thread between Ms. Doshi, Ms. Kraft, and Ms. Rizk, which continued to July 7, 2021. Both Ms. Doshi's initial email and the July 6-7, 2021 thread were sent for the purpose of seeking or providing legal advice and are therefore protected by the attorney-client privilege. Accordingly, Sharestates is not required to produce Document 12.

### 9. Document 13

Document 13 begins with an email dated August 2, 2021 from Radni Davoodi, who appears to be a member of Sharestates' Board of Directors, to Ms. Rizk, to which Mr. Davoodi attaches a July 26, 2021 email from Ms. Kraft, who in turn attaches her July 23, 2021 report of her investigation into employment matters. Ms. Kraft's email and report were sent for the purpose of providing legal advice and are therefore protected by the attorney-client privilege. Mr. Davoodi does not seek any legal advice in his email to Ms. Rizk, who does not appear to be an attorney. Accordingly, Mr. Davoodi's email is not protected by the privilege.

Accordingly, Sharestates must produce the email from Mr. Davoodi dated August 2, 2021, but it may redact the remainder of Document 13.

**10. Document 15**

Document 15 is an email dated September 21, 2021 from Mr. Shayanfekr to Ms. Rizk forwarding a September 21, 2021 email from Ms. Kraft containing legal advice with respect to Ms. Teklu. Mr. Shayanfekr does not seek from or provide any legal advice to Ms. Rizk and therefore the first email is not protected by the attorney-client privilege. Ms. Kraft, however, does provide legal advice and therefore the second email is protected by the privilege.

Accordingly, Sharestates must produce Mr. Shayanfekr's email to Ms. Rizk, but it may redact Ms. Kraft's email from Document 15.

**11. Document 18**

Document 18 is a thread dated July 1, 2021 between Ms. Kraft and Ms. Rizk. The purpose of this thread is to seek and/or provide legal advice concerning employment law matters and it is therefore protected by the attorney-client privilege. Accordingly, Sharestates is not required to produce Document 18.

**12. Document 19**

Document 19 first contains four emails dated July 19, 2021 between Ms. Kraft and Ms. Rizk concerning Mr. Leccese. The final email in Document 19 is a July 19, 2021 email from Mr. Atkins to Ms. Rizk purporting to attach Mr. Leccese's personnel file, but the file is not included in Document 19. The four emails between Ms. Kraft and Ms. Rizk were sent for the purpose of seeking or providing legal advice and are therefore protected by the attorney-client privilege. The email between Ms. Rizk and Mr. Atkins was not sent for the purpose of seeking or providing legal advice and therefore is not protected by the privilege.

Accordingly, Sharestates may redact the four emails dated July 19, 2021 between Ms. Kraft and Ms. Rizk, but it must produce the email from Mr. Atkins.

### 13. At-Issue Waiver

Mr. Leccese argues that Sharestates has "placed at issue the results of its investigations of employee complaints" and is therefore "impermissibly using the attorney-client privilege as a shield and a sword." (ECF No. 46 at 1; see ECF No. 35 at 5). He argues that this at-issue waiver requires the Court to compel Sharestates to produce the Documents or preclude Sharestates from relying on the employees' complaints to claim cause existed to justify terminating his employment. (ECF No. 35 at 6). As set forth above, however, the Court is ordering the disclosure of those Documents that contain the substance of other employees' complaints about Mr. Leccese on which Sharestates predicated termination of his employment for cause. In contrast to the authority on which Mr. Leccese relies, however, this is not a case where the adequacy of an internal investigation of employee complaints is at issue. See Brownell v. Roadway Package Sys., Inc. 185 F.R.D. 19, 25 (finding that defendant waived attorney-client privilege "by asserting the adequacy of its investigation as a defense"). In receiving those Documents, the disclosure of which the Court is ordering, Mr. Leccese will learn the substance of the other employees' complaints against him that led to his termination. Accordingly, we conclude on the present record that Sharestates has not waived attorney-client privilege with respect to Ms. Kraft's advice concerning the legal significance of those complaints.

### IV. CONCLUSION

For the reasons set forth above, Mr. Leccese's Motion is **GRANTED in part and DENIED in part** as follows:

1. Sharestates is NOT required to produce Documents 11, 12, and 18.

2. Sharestates MUST produce Documents 3, 5, 6, 7, 8, 9, 13, 15, and 19 with redactions as set forth above.

Dated:      New York, New York
            May 13, 2025

SO ORDERED.

_____
SARAH L. CAVE
United States Magistrate Judge
